Quentin M. Rhoades
State Bar No. 3969
Nicole L. Siefert
State Bar No. 11235
**RHOADES, SIEFERT & ERICKSON, P.L.L.C.**
430 Ryman, 2nd Floor
Missoula, Montana 59802
Telephone: (406) 721-9700
Telefax: (406) 721-5838
qmr@montanalawyer.com
nicole@montanalawyer.com

*Pro Querente*

CLERK OF DISTRICT COURT
LISA BROOKS

2017 MAR 23 AM 10: 07

FILED
BY: _____
DEPUTY

# MONTANA NINETEENTH JUDICIAL DISTRICT COURT, LINCOLN COUNTY

| **DOUG ROLL,** | Cause No.: DV-17-58 |
|---|---|
| Plaintiff, | |
| v. | ***COMPLAINT AND JURY DEMAND*** |
| **HAGADONE MONTANA PUBLISHING, LLC, dba THE WESTERN NEWS,** | |
| Defendant. | |

Plaintiff Doug Roll, for his Complaint against Defendant HAGADONE MONTANA PUBLISHING, LLC, states as follows:

## PARTIES

1. Plaintiff Doug Roll ("Plaintiff") resides in Libby, Lincoln County, Montana.

2. Robert Henline ("Henline") is an individual who resided in

*Sum Issued*

Libby, Lincoln County, Montana at the time of the events described in this Complaint. He was an employee of Defendant Hagadone Montana Publishing, LLC.

3. Defendant Hagadone Publishing, LLC, dba *The Western News*, ("TWN") is a corporation incorporated under the laws of the State of Montana doing business in Libby, Lincoln County, Montana. TWN employed Henline during the time of the events described in this complaint. Defendant TWN is vicariously liable for the acts and omissions of its employee Henline under the doctrine of *Respondent Superior*.

## JURISDICTION AND VENUE

4. The Court, as a court of general jurisdiction, has authority to enter a final judgment resolving the contested issues in this case.

5. Because Defendant TWN's principal place of business is in Lincoln County, Montana, the Nineteenth Judicial District of Montana is a proper venue for this civil action.

## GENERAL ALLEGATIONS

6. Plaintiff was the duly appointed Mayor of the City of Libby from November 20, 2008 to September 7, 2016.

7. Henline was the editor of Defendant TWN during the time of the events described in the complaint.

8. On April 8, 2016, Volume 115, No. 29 of *The Western News* featured three (3) articles about Plaintiff, and another that implicated him.

9. The front page headline of Volume 115, No. 29 read "Mayor lies to council, public."

10. The next article on the same page of Volume 115, No. 29 read "Judge gives City Attorney lesson in criminal prosecution." This was referring to the City Attorney whom Plaintiff hired on a temporary basis.

11. Page A3 of Volume 115, No. 29 read "Libby Mayor orchestrates illegal meeting."

12. Page A4 of Volume 115, No. 29 featured an editorial, by Henline, which boldly read: "The time has come for Roll to go."

13. Henline, in his capacity of agent for Defendant, authored all four articles and promoted them on Facebook.

14. Henline, in his capacity of agent for Defendant, authored numerous other articles about Plaintiff throughout Plaintiff's term as Mayor, which have the same antagonistic tone and malicious falsehoods.

15. At all times relevant to the events at issue in this Complaint,

Henline acted as agent of Defendant TWN, in his official capacity of publisher and editor of *The Western News*.

16. On April 13, 2016, days after Defendant's defamatory articles came out in the April 8, 2016 newspaper, Tammy Brown signed her first of three petitions to recall Plaintiff as Mayor. Ms. Brown later testified under oath that her recall efforts started because of Defendant's articles.

17. Henline, in his capacity of agent for Defendant, also influenced City of Libby council members, who because of the articles and false statements about Plaintiff, wanted Plaintiff to resign.

18. On April 15, 2016, Defendant published an article about council members Dejon Raines and Brian Zimmerman asking Plaintiff to resign.

19. Henline spoke to Raines and Zimmerman a few days before they demanded Plaintiff resign. Henline told them they took part in an illegal meeting on April 1, 2016 with Plaintiff. Henline boldly – and groundlessly – called into question Plaintiff's honesty and integrity. All of this he reported in his April 8, 2016 story.

20. The former city attorney, Allan Payne, contacted Henline and told him that he needed to call the city council members mentioned in the article and tell them that Plaintiff did not orchestrate an illegal meeting,

and the meeting was perfectly legal. Henline refused to do so, in a reckless disregard as to the truth of the statements he printed and a malicious intent to besmirch Plaintiff's character.

21. Plaintiff asked Defendant for a retraction on the article about holding an illegal meeting, because, in fact, no illegal meeting took place.

22. Plaintiff further asked Henline to contact the city council members Henline had spoken with, and tell them that the meeting was legal. Henline refused to do so, in reckless disregard as to the truth of the statements he made and in a malicious intent to tarnish Plaintiff's character.

23. Henline, rather than comply with Plaintiff's request and the advice of the City Attorney, took it one step further and published an article on April 29, 2016, stating that Plaintiff called for a retraction but refused to acknowledge that Plaintiff deserved a retraction.

24. On May 6, 2016, Defendant TWN printed a retraction which read "A quorum on a six-member council would require the presence of four members, not three. The Libby mayor votes only in the event of a tie with council members. Therefore, the unofficial and unannounced meeting was not illegal." The retraction was not authored by Henline.

5
COMPLAINT AND JURY DEMAND

25. Upon information and belief, Henline, in his capacity, refused to write the retraction.

26. Plaintiff filed a Motion for Temporary Restraining Order and Preliminary Injunction against Tammy Brown and the others involved in pursuing the recall petition on July 29, 2016 (*Roll v. Brown, et al.*, Cause No. DV-16-168).

27. At the hearing to consider Plaintiff's Motion, Tammy Brown testified under oath that it was after reading the articles by Defendant that she decided she would go to the council meetings. After attending the meetings, she conferred with Henline, and others, to formulate a plan to recall Plaintiff.

28. At the hearing, Tammy Brown further testified that it was Henline who actually drafted the recall petitions.

29. Defendant TWN knew that Henline drafted the recall petitions, and that Henline even asked photo editor Paul Sievers, who was also an employee of Defendant TWN, to proofread the second petition to recall Plaintiff.

30. On June 2, 2016, Henline resigned or was fired.

31. On June 15, 2016, the third recall petition was drafted.

32. The recall petition was approved for circulation on June 20, 2016.

33. Ultimately, Plaintiff won his lawsuit against Tammy Brown and the other recall petition supporters. The court found:

1. Plaintiff's request for injunctive relief is warranted under Mont. Code Ann. § 27-19-201.
2. Collection of signatures for the recall should be enjoined because the underlying affidavit is not based on personal knowledge.
3. Collection of signatures for the recall should be enjoined because the petition is not sufficiently specific as to the legal basis for the recall.
4. In substance, the City Council expressly ratified [Plaintiff's] hiring of a temporary city attorney, and he ensured the Rules of the City Council were followed.
5. [Plaintiff] has not violated his oath of office.
6. [Plaintiff] has committed no acts of official misconduct.
7. The first alleged ground for recall is legally insufficient to amount to official misconduct because the council ratified the appointment.
8. The [second] alleged ground for recall is legally insufficient to amount to official misconduct because the proponent of the resolutions failed to follow the procedural rules for getting matters on the agenda.

(Findings of Fact, Conclusions of Law, and Order Granting Preliminary Injunction, *Roll v. Brown, et al.*, Cause No. DV 16-168, attached hereto as Exhibit A.)

34. After all the bad press, thousands of dollars in attorneys fees

7
COMPLAINT AND JURY DEMAND

expended, loss of trust with City of Libby council members, Plaintiff had no choice but to resign in the face of his lost reputation. The public shaming made it impossible to do his job.

## COUNT ONE
## (Defamation)

35. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

36. Defendant authored and effected the publication of articles about Plaintiff in TWN in the spring of 2016.

37. The articles were false and unprivileged publications in writing that exposed Plaintiff to hatred, contempt, ridicule, and/or obloquy; caused Plaintiff to be shunned or avoided; and/or had a tendency to injure Plaintiff in Plaintiff's occupation.

38. The articles contained materially false information regarding Plaintiff including but not limited to stating that Plaintiff held an "illegal meeting" and calling Plaintiff a liar when Plaintiff tried to explain that he had hired the new City Attorney on a "temporary basis."

39. Defendant knew that the articles contained materially false information regarding Plaintiff.

40. Defendant acted with actual malice in publishing numerous articles throughout the Spring of 2016, in a reckless disregard as to the truth of the statements and with the intent to besmirch Plaintiff's character and force him out of office.

41. The articles constituted libel.

42. Defendant also told members of city council and others that Plaintiff's actions were "illegal", when Defendant knew the actions were not illegal.

43. Defendant acted with actual malice when Heline told city council members and others that Plaintiff's actions were illegal, in a reckless disregard as to the truth of the statements and with the intent to besmirch Plaintiff's character and force him out of office.

44. The actions of Defendant constitute slander.

45. As a result of Defendant's actions, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT TWO
### (Civil Conspiracy)

46. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

47. Without Plaintiff's involvement or consent, Henline had a meeting of the minds with Tammy Brown and others to force Plaintiff out of office.

48. The purpose of Henline, Tammy Brown, and the others, to remove Plaintiff from office, was unlawful in that Henline knew or should have known that the allegations made against Plaintiff, upon which they based the recall petition, were false.

49. Henline used his position as the editor of TWN to publish negative articles rife with knowingly false factual allegations against Plaintiff, which caused Henline's purpose of inspiring and motivating an illegal recall attempt.

50. As the result of the conspiracy between Henline, Tammy Brown, and the others, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT THREE
### (Tortious Interference with Contractual or Business Relations)

51. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

52. Defendant intentionally and willfully published negative articles

containing false information about Plaintiff, with full knowledge that the facts were false.

53. Acting in his official capacity of publisher and editor of TWN, Henline spread the articles and false facts online and in conversation, including to members of the City of Libby Council, with full knowledge that the facts were false, and did so with a calculation to cause damage to Plaintiff in his contractual relationship with the City of Libby.

54. Defendant's publication and spreading of the false facts was done with the unlawful purpose of causing damage or loss by forcing Plaintiff out of office when there were no legal grounds to do so, or other right or justifiable cause on the part of Defendants.

55. As a result of Defendant's publication and spreading of the false facts, Plaintiff suffered damages in an amount to be proven at trial.

### COUNT FOUR
### (Actual Malice)

56. Plaintiff realleges the foregoing paragraphs as if fully set forth herein.

57. Defendant knew that the facts they published in the articles about Plaintiff were false.

58. Defendant deliberately proceeded to act in conscious disregard of the high probability of injury to Plaintiff, or deliberately proceeded to act with indifference to the high probability of injury to Plaintiff, by authoring and effecting the publication of articles about Plaintiff in issues of TWN in the spring of 2016, containing facts they knew to be false.

59. Henline even failed to correct the facts he knew to be false when both Plaintiff and former city attorney, Allan Payne, requested he do so. When he refused to publish a retraction of the articles containing the facts he knew to be false, he was acting in his official capacity of publisher and editor of TWN.

60. As a result of Defendant's actual malice, Plaintiff is entitled to an award of punitive damages.

## REQUEST FOR RELIEF

Accordingly, Plaintiff, Doug Roll, requests judgment against the Defendant TWN:

1. For damages in an amount to be determined at trial;

2. Punitive damages;

3. Attorney fees and costs; and

4.     Such other and further relief as the Court deems just.

DATED this 22nd day of March, 2017.

>Respectfully Submitted,
>RHOADES, SIEFERT & ERICKSON, PLLC
>
>By: *Nicole Siefert*
>Quentin M. Rhoades
>Nicole L. Siefert

## JURY DEMAND

Jury trial is demanded on all counts so triable.

                Respectfully Submitted,
                RHOADES, SIEFERT & ERICKSON, PLLC

        By: */s/ Nicole Siefert*
                Quentin M. Rhoades
                Nicole L. Siefert